Mr. Greer? Yes. And Mr. Fairchild? Yes. Good morning. Case number 20-2381, United States v. Charles Westfall, Jr. All right. Mr. Greer for the appellate. You may proceed. Thank you. May it please the court and Mr. Fairchild and good morning all. I'm coming from Spencer, Iowa. I'm representing Charles Gale Westfall, Jr. Mr. Westfall urges that the district court here found him in possession of firearms and sentenced him according to relevant conduct and erred in so doing. The crime of the offense in this case involved a single shotgun and an indictment and the facts of that are somewhat relevant and important, I think, because the co-defendants there, Ms. Hanson and Mr. Westfall's friend, a fellow named Donnie Rundle, scoped out this farm acreage. All four of these people were meth users and that's no surprise. Anyway, Rundle and Hanson then later met up with Mr. Westfall and his then-girlfriend Stupka and told them, hey, we've looked at this place, let's go out. And a burglary, all four of them entered that place and burglarized it and in so doing, a single shotgun was taken. That happened on June 17th of 2017. The people were found because Ms. Hanson pawned a sound bar and then there were buccal swabs that matched up to Donnie Rundle and so forth. Now, all of that swabbing and all of that stuff took a lot of time, probably a year and a half or so before that came to light. Meanwhile, in August 31st of 2017 in Story County, Mr. Westfall was charged and found to be in possession of firearms that were stolen in, I believe, Nevada, Iowa, Story County, Iowa. He pled guilty and was sentenced in both Story County and in Wright County where they were found. I think he pled in Wright County to one possession of a firearm and in Story County to theft. So the government, when we're getting ready for they started at base level 14, added two because the shotgun was stolen, added four because it was possessed in connection with another felony, the burglary, and came up with a total of 20 points minus three for acceptance of 17. We agreed with that except for the burglary possession. But as you see in my brief, because Chief Judge Strand found that Mr. Westfall was present and committed the burglary, there was some dispute on that. Mr. Westfall didn't testify. Miss Hanson did. And also, we provided the transcript of Mr. Rundle's sentencing where Mr. Rundle said that it was just and Leah Hanson. But the judge found that it was all four of them and imposed the four levels up for the burglary. We're not appealing that. But then probation scored it up by starting out at 20, level 20, because of this August 31st incident in Story County. And using that as relevant conduct, then from there, added four because there were between eight and 24 firearms. Added two because the firearms were stolen, again, the shotgun. And then the other four was for the possession during a felony, the burglary. So they came up with a 30. Minus three for acceptance, 27. So the US probation scored the guidelines 130 to 162. The maximum sentence is 120. The way we scored it would have been 17. And he's criminal history six, no matter what. That would have been 51 to 63 months. So he got virtually more than double the sentence. He appealed. We claim that the chief judge strand erred in the decision concerning relevant conduct. And at sentencing, his honor did indicate, which was refreshing, that if he was wrong, he wasn't sure that he'd give the same sentence. And he would welcome a resentencing. Sometimes in district cases, they just say, well, I'd give you the same thing, so what the heck. The two events are not relevant conduct to each other because they were not substantially connected to each other by at least one common factor, such as common victims. There were no common accomplices. Common purpose, there isn't really a common purpose. The purpose, obviously, for any kind of burglary or theft or something like that is to gain money to buy drugs, in this case. There's no similar modus operandi. And considering the degree of similarity of the offense, the regularity or repetitions of the offense, and the time interval between them, they do not qualify as a common scheme or plan and are not a part of a single episode, spree, or ongoing series of offenses. West Falls level should have been determined to be 14 plus 2 plus 4 because of the felony offense and ended up with a level 17. The case I cite is cited in the following the KISS principle. It's a primer put out by the United States Sentencing Commission on relevant conduct, March 2020. I cite that in my brief. What is included in the standard relevant conduct definition? Well, there's two parts of that. The first part, I believe the government will agree, does not apply. The first part is conduct or acts or omissions done or caused by the defendant in preparation for, during, or in the course of detection for the offense of conviction. Then the second part, I think, is where we're all focused, is jointly undertaken criminal activity. And jointly undertaking criminal activity, then you also have to figure out whether it's grouped. And according to 3D1.2D, how does the grouping interact with relevant conduct? The sentencing guidelines say that the court must consider whether the conduct was part of the same course of conduct or common scheme or plan. And first, for two or more offenses to constitute a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims. Again, we don't have that. Common accomplices, don't have that. Common purpose, there really isn't a common purpose. Or similar modus operandi, which fails in this case. And the case I cite and is cited in the, by the primer on relevant conduct by the US Sentencing Commission, is this United States versus Amerson. Which held that previous handgun possession was not relevant conduct in the instant felon in possession offense, even though the offenses were three months apart, because with only some evidence of temporal proximity and no showing of regularity, the government had to show stronger evidence of similarity. In other words, it's kind of a case where there are these three factors, and if you've got really strong, one of them's really strong, then the other ones don't have to be. In this case, none of them are strong except for the timing. And you know, the August and June and the two and a half months apart, that's certainly closer than some of the cases decide. But I think that Amerson case stands for the proposition that the case was wrongly decided here and should be reversed and remanded for sentencing. Now, I point that the US versus Mahone, which is a, well, I'm running out of time, so I'll save that for rebuttal. Thank you. All right. Thank you, counsel. May I please the court? You may proceed. Counsel. Good morning, everyone. My name is Ford Fairchild and I represent the United States in this case. This case is not a 1B, 1.3, 1A or B case. This is a 1B, 1.3, A2 case. And just that there are two ways that the defendant's conduct here can be counted as relevant conduct. And one is the same course of conduct as found by the district court at page 48 of the transcript. But also, as argued in the brief, this court could find as a separate ground supported by the record that there was a common scheme or plan in this case. And this court could then rely on that independently of the district court. The government's argument is both apply here. Running down the factors of the same course of conduct argument, Mr. Greer said it correctly. It's the similarity of the offense, the regularity, and then the time interval. I believe he's conceded throughout litigation and again today that it is, in fact, a small time interval and that weighs in favor of the government. Of course, that's the right answer because we have just 11 weeks separating these as he is greater than that. Though regularity is the government's weakest argument here, the district court level, I said it was neutral. I have, upon reflection, decided maybe it's a little better than neutral, but not strong, not super strong. As the government reads Mahone, it does appear that two instances are sufficient for regularity. But as the defense points out, other circuits have said two is not a pattern. So whether or not the court thinks it's absent or weak or neutral, the other two factors here, the time interval and now the similarity of offense become more important. And I'll talk mostly about the Hansen's account about it being a burglary, page 56 of the transcript, by which the defendant and others obtained a stolen firearm that he then used to support his drug habit. Again, there's really no dispute on those facts as I understand the record. In fact, the defendant said as much, page 63 of the transcript, that the purpose of these burglaries was to feed the drug habit. Then you have the August 31st burglary incident. And again, there's really not room for much disagreement on the facts there because paragraph 47 of the PSIR indicates that he was convicted of theft in Story County. And then you have paragraph 45 indicating he was convicted of the firearms offense in the adjoining counties. And then you have officer Stuckey's testimony about those events. So what you're left with then is two burglaries within 11 weeks of each other, both of which are of residents, both of which leave the defendant in possession of a firearm. Both were committed with groups of people and both resulted in the defendant having something valuable, a firearm for methamphetamine. The government argues that is sufficiently similar to, along with the timing, which is very close to win the day for the government here, even again, if the regularity is absent or maybe more in favor of the government's position, weak, but not absent entirely. I'll just note, you do have an interesting third piece of this or additional piece of this. It's that the district court did rely on Ms. Hansman's account of a third event, an attempted burglary. She says a couple months after the June 17th one, she committed an attempted burglary. That's page 20 of the sentencing transcript. The district court understood that and corrected the defense counsel at paragraph 43 when he described it differently. But then the district court didn't rely on it, at least not explicitly. So I'm not sure how that figures in exactly. I mean, it's clear that the district court thought too was sufficient in light of the other factors. It appears as if he credited the testimony but didn't use it. So that's an additional factor here. Talking again about similarity of cases, I want to talk specifically about Amerson. So Amerson, the district court said or the circuit court there said that the firearms possessions were insufficiently connected and the government tried to overcome that by showing that there was these raging gun battles and the government was unable to show that except through the most strained reading the circuit's opinion. By contrast, I think here the government has done a good job. Well, I'm sorry. I think the in the purpose as well as in the execution. So for all those reasons, I think that the evidence does support the district court's finding. The district court made a fact-intensive review and I think that it's not clear error and so it should be left in place. Arguing in the alternative, however, the government didn't argue at the district court level. But again, it thinks this court is free to consider the second way that these actions can be accounted as conduct and that's the common scheme or plan. As the court knows well, you only need one factor to be similar and here the government submits you have two. We have a common purpose. The common purpose of both these burglaries and perhaps a third as well is to parlay stolen items, including firearms, into drugs. That's the purpose of all three of these. And the modus operandi, maybe not the most unusual circumstances, but still sufficiently distinct. A group of people robbing, burglarizing rather, houses to get valuables and obtain firearms and trade them. So it looks like the government has met two of the factors there and it only needs to meet one. And here when we're talking common scheme or plan, it's unnecessary to have a third or any regularity. And we know that because the sentencing guidelines themselves have an example where they just have two cocaine sales. If you look at comment note 5C example 2, you'll see that their illustration of when it might be relevant contact is if you have an individual who engages in two cocaine sales and that constitutes the same conduct. And the fact that they use that as an illustration I think strengthens the government's argument. Additionally, that note seems to be very similar to what happened in this case. You have a state and a federal conviction, not an intermediate time of custody. So it looks as if the district court correctly found the conduct to be relevant. It seems also then that there's independent grounds to find that the conduct was relevant. And once we've made that determination that this is relevant conduct, the other enhancements just flow right from the logic of the case, reading up the guidelines. One additional point I wanted to make is the defense attorney is correct that he and I anticipated different guidelines. However, the plea agreement, and that's at the DCD 90, it allows both Mr. Greer and myself to argue for additional departures and variances. In fact, the defendant availed himself of that and won a variance in this case. So the sentence was higher than we expected at the plea stage. I think that's accurate, or at least the guideline range was higher than we predicted at the plea stage. So the defense attorney, in addition to the agreement and plea, were already contemplating variances and departures and adjustments. And that's what happened here. The judge went up at my request, and then the judge went down at Mr. Greer's request. And after this fact-intensive review, he concluded that it was in fact relevant conduct and the enhancements applied appropriately. So the government, it seems, wins not just on the reasons advanced at the district court level, but also the independent grounds now advanced in the common scheme or plan. I appreciate the court's time, and if there's any questions, I'd be happy to give them a stab. All right. Guess not. Then I'll quietly sit out, Your Honor. All right. Thank you very much. Mr. Greer, take a minute to wrap up. Thank you. I'd like to address two things. First of all, as noted in the Amerson case, any case involving a relevant conduct determination at least involves one other instance of conduct. So it doesn't really say anything for the government to say, well, there was this other burglary and possession. So in cases like this, regularity is completely absent, and where the government shows only the other offense. The other thing is, with regards to the Mahomes case, Mahomes case that Mr. Fairchild cites, in that case, the offense conduct paragraphs of the PSR, to which Mahomes did not object, contained substantial evidence that the three firearms at issue were part of a single course of conduct and involved informants who made controlled buys reporting that guns were being kept. This is a gun crime, and these people who are stealing guns, they aren't planning on stealing guns. It's not like burglarizing gun shops. If we were doing that, we wouldn't be here today. That's got to be relevant conduct. They go into a place, and if there's a gun, there it is, and because these people are felonies, they get rid of them right away. So it's not like these other cases where they're continually possessing them, and they go do a search warrant, and they see they had guns on time one, and then four months later, they catch them with the same guns. So I think there's a big distinction that can be made between the Amerson case, which I think was rightly decided, and Mahomes. Thank you. Thank you very much, counsel, and Mr. Greer, the court wants to extend its thanks to you for your service as appointed counsel in this case. I'm happy to do it. Thank you very much. All right. All right, counsel, the case is submitted. The court will